UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL KEITH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | No.  2:24-cv-03393-DJC-CKD<br><br><br>FINDINGS AND RECOMMENDATIONS |

　　　　Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively.  For the reasons discussed below, the court will recommend that plaintiff's motion for summary judgment be denied and the Commissioner's cross-motion for summary judgment be granted.

BACKGROUND

　　　　Plaintiff, born in 1970, applied for DIB and SSI on October 11, 2021, alleging disability beginning January 1, 2020.  Administrative Transcript ("AT") 15, 33.  Plaintiff alleged she was unable to work due to clinical depression and PTSD.  AT 66.  On December 13, 2023, an Administrative Law Judge (ALJ) issued a decision finding plaintiff not disabled between the

1

alleged onset date in January 2020 and the date of the decision.  AT 15-36.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.
>
> 2. The claimant has not engaged in substantial gainful activity since January 1, 2020, the alleged onset date.
>
> 3.  The claimant has the following severe impairments: mood disorder; anxiety disorder; post-traumatic stress disorder; adjustment disorder; insomnia; alcohol use disorder and migraine impairment.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work except could occasionally climb; could have occasional exposure to weather; could have exposure to generally moderate noise levels; should never have exposure to unprotected heights; limited to the performance of simple, routine and repetitive tasks; limited to work in a low-stress environment requiring only occasional decision-making and only occasional changes in work setting; limited to work establishing only production quotas based on end of workday measurements with no assembly line work required; and limited to only occasional interaction with the public and with coworkers.
>
> 6.  The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born [in 1970] and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age.
>
> 8. The claimant has at least a high-school education.
>
> 9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.
>
> 10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.[1]
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2020, through the date of this decision.

AT 17-35.

---

[1] Relying on vocational expert (VE) testimony, the ALJ found that plaintiff could perform jobs such as meat trimmer, floor waxer, marker, router, and checker.  AT 34.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly discounted the medical opinion of consulting examiner Dr. Dixit; (2) the ALJ improperly discounted plaintiff's subjective symptom testimony; and (3) the ALJ improperly discounted the lay witness testimony of plaintiff's sister.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

////

////

ANALYSIS

    A.  Medical Opinion Evidence

Plaintiff argues that the ALJ improperly gave little weight to the opinion of Dr. Aparna Dixit, who evaluated plaintiff on January 18, 2022. AT 792-794. In that exam, as the ALJ summarized, plaintiff reported "depression, past abusive relationship trauma, social anxiety, poor sleep, isolating behavior, forgetfulness and easy distractibility." AT 27, citing AT 792-794. Plaintiff reported that she quit drinking in 2009. AT 793.

Dr. Dixit noted that plaintiff had an anxious and depressed mood and a flat affect. AT 793. During the exam, plaintiff was "tearful" and "distraught" with signs of a hand tremor. 793. However, Dr. Dixit found no notable deficits in plaintiff's appearance, speech, thought content, orientation, memory, insight, judgment, and fund of knowledge. AT 793-794. Dr. Dixit assessed major depressive disorder, anxiety disorder, and PTSD. AT 794. Dr. Dixit further assessed "[s]ome cognitive deficits" in concentration and processing speed, secondary to anxiety. AT 794.

Dr. Dixit opined that plaintiff would have marked difficulty in (1) remembering and carrying out detailed and complex tasks, (2) dealing with the public, and (3) maintaining pace and persistence over two-hour increments. AT 794. Dr. Dixit opined that plaintiff would have moderate difficulties with other mental functions and "can understand, remember and carry out simple instructions without difficulty."[2] AT 794.

After summarizing Dr. Dixit's opinion (AT 27), the ALJ evaluated it as follows:

> The opinion of Dr. Dixit is unpersuasive, as, although accompanied by a psychological exam report as attempted support, <u>the evidence is most consistent with no more than moderate mental limitations</u>. Dr. Dixit found the claimant capable of simple instructions with moderate limitations in attention and concentration. However, she would have moderate difficulties interacting with and relating to co-workers and supervisors, <u>marked difficulties dealing with the public and marked difficulties maintaining pace and persistence.</u> This opinion is simply not consistent with the evidence as a whole.

AT 30-31 (citing AT 792-794) (emphasis added). The ALJ went on to note evidence in the

---

[2] The RFC limited plaintiff to "simple, routine and repetitive tasks" and the VE considered this limitation in evaluating available jobs. AT 56-58. Plaintiff argues that three of the five jobs identified by the VE would be precluded if the RFC included "marked" difficulty in carrying out detailed and complex tasks, but if one available job remains, any such error is harmless.

4

record of plaintiff's ability to get along with others and the lack of evidence of interpersonal problems. AT 31. The ALJ concluded that, overall, the evidence supported only moderate limitations in interacting with others. AT 31. The ALJ next noted that "the record lacks evidence of learning, intellectual or neurocognitive disorder." AT 31. "Overall," the ALJ concluded, "the evidence appears most consistent with moderate limitation in concentrating, persisting, or maintaining pace and with the limits [described in the RFC]. Thus, as Dr. Dixit's opinion is inconsistent with the record in the ways discussed above, it is unpersuasive." AT 31. Earlier in the decision, the ALJ reviewed the evidence of mental limitations and found plaintiff moderately limited in interacting with others and concentration, persistence, and pace. AT 21-22.

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); see also Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

For disability applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017). Because plaintiff filed her application in 2021, it is subject to the new rules for the evaluation of medical evidence.

The revised rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or

1  finding is consistent with evidence from other medical sources and non-medical sources,
2  including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will
3  articulate how he considered the most important factors of supportability and consistency, but an
4  explanation for the remaining factors is not required except when deciding among differing yet
5  equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). The new
6  regulations "still require that the ALJ provide a coherent explanation of his reasoning" and
7  establish "a minimum level of articulation to be provided in determinations and decisions, in
8  order to provide sufficient rationale for a reviewing adjudicator or court." Sam-Chankhiao v.
9  Kijakazi, 2:20-cv-0186 DB, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022), citing Hardy v.
10 Commissioner, 554 F.Supp.3d 900, 906 (E.D. Mich. 2021).

11      Here, plaintiff argues that the ALJ should have adopted Dr. Dixit's view that plaintiff had
12 marked (as opposed to moderate) difficulties interacting with others. Considering whether Dr.
13 Dixit's opinion was supportable, the ALJ cited evidence that plaintiff "generally presented with
14 pleasant, cooperative demeanor" in exams. AT 31; see AT 22 (citing multiple mental status
15 exams). As to consistency, the ALJ noted that "the record generally lacks discussion of specific[]
16 past issues with others (bosses, co-workers or the public)" and that plaintiff "referenced having
17 friends and being able to shop in stores." AT 31; see AT 50 (hearing testimony), 302 (October
18 2022 function report). But see AT 2356 (October 2022 medical note that plaintiff "had conflicts
19 with family so not able to stay with them . . . anymore"). The ALJ noted that plaintiff was
20 "observed to be social and get along with her peers" during a two-week treatment program in July
21 2020. AT 31, citing AT 511. The ALJ also found that Dr. Dixit's psychological exam results
22 were "most consistent with no more than moderate mental limitations." AT 30; see AT 27
23 (noting Dr. Dixit's observation that plaintiff was distraught but cooperative). Later in the
24 opinion, the ALJ noted that "the record lacks significant observations of anger or outbursts." AT
25 32. Though there was conflicting evidence in the record about plaintiff's ability to interact with
26 others, the ALJ provided a "coherent explanation of his reasoning" and articulated why he found
27 plaintiff only moderately limited in this function. See Sam-Chankhiao, 2022 WL 4226170, at *3.
28 Where "the evidence can reasonably support either affirming or reversing a decision, we may not

6

substitute our judgment for that of the ALJ." Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (cleaned up) (citing Andrew v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

Plaintiff also argues that the ALJ should have credited Dr Dixit's opinion that plaintiff had marked (as opposed to moderate) limitations in concentration, persistence, and pace. As to the supportability factor, the ALJ noted that, in Dr. Dixit's evaluation of plaintiff, "there was no evidence of thought slowing or stoppage." AT 31; see AT 793-94. In that exam, plaintiff was "unable to perform serial sevens or repeat digits backwards but could follow a three step command." AT 22, citing AT 793-94. As to the consistency factor, the ALJ reasoned that "providers' observations have reflected largely adequate, if not normal, cognitive functioning." AT 31; see AT 22 (noting multiple exam findings "fluctuat[ing] from distracted, impaired concentration to intact/normal attention and concentration"). "The record also lacks evidence of learning, intellectual, or neurocognitive disorder." AT 31. Here, too, the ALJ provided sufficient rationale for adopting a moderate limitation in concentration, persistence or pace, instead of Dr. Dixit's opined marked limitation in this area. Thus, the undersigned defers to the ALJ's assessment of Dr. Dixit's opinion. Plaintiff has not shown error in this claim.

### B. Subjective Symptom Testimony

Plaintiff claims that the ALJ improperly discounted her subjective symptom testimony. She argues that the ALJ failed to specify which testimony was not credible, supported by specific evidence in the record, particularly as to her need for extra breaks and absences to deal with her mental symptoms.

1. Plaintiff's Testimony

At the October 31, 2023 hearing, plaintiff testified that she worked full-time as a dispatcher for the City of San Francisco for a number of years, ending in 2019. AT 45-46. Plaintiff testified that her job ended because she was "emotionally unstable and it caused me to call out . . . sick in an excessive amount," resulting in her suspension. AT 47. At work, she had "crying spells" requiring 20 to 30 minute breaks, which was more than the job allowed. AT 47-48. Plaintiff stated that, since then, her mental health problems had prevented her from working. These included hallucinations, panic attacks, hearing voices, paranoia, isolation, anxiety, and poor

social skills because "I think that people are out to get me." AT 48. Plaintiff testified that she was homeless and that her mental health medications, while somewhat helpful, caused drowsiness, and she slept for two or three hours a day. AT 49. She testified that she had a history of drinking alcohol to self-medicate her emotional problems but was not drinking at present.[3] AT 50-51.

### 2. The ALJ's Decision

"In evaluating the intensity, persistence and limiting effects of the claimant's symptoms," the ALJ wrote, "the undersigned has considered multiple factors." AT 24. The ALJ then summarized plaintiff's hearing testimony in detail. AT 24-25. The ALJ next summarized plaintiff's reported daily activities, the lay testimony of plaintiff's sister, and the treatment record. AT 25-29. The ALJ found that "the evidence, while supportive of the medium residual functional capacity adopted at Finding 5, fails to reflect the symptom severity or degree of limitation generally alleged." AT 25. The undersigned reviews the ALJ's reasoning as to credibility in the analysis below.

### 3. Legal Standard

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider

---

[3] While there was some physical symptom testimony (AT 52-53), the ALJ found that "there has been minimal evidence of objective abnormalities [or] substantive treatment" for physical pain issues. AT 20. Plaintiff acknowledges in briefing that "she alleges disability primarily on her mental impairments, not on a physical inability to" perform tasks. (ECF No. 10-1 at 14.)

8

1  objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341,
2  344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ
3  then may consider the nature of the symptoms alleged, including aggravating factors, medication,
4  treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the
5  applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent
6  testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a
7  prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d
8  1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-
9  01; SSR 88-13.

10   "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work."  Smartt
11  v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022).  "This requires the ALJ to 'specifically identify the
12  testimony [from a claimant] she or he finds to be not credible and … explain what evidence
13  undermines the testimony."  Lambert, 980 F.3d at 1277, quoting Treichler v. Comm. of Soc. Sec.
14  Admin., 775 F.3d 1090, 1102 (9th Cir. 2014).  Boilerplate statements and general summaries of
15  the evidence, without more, are not enough. Id. at 1277-78.  That said, an ALJ is not required "to
16  perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying
17  benefits."  Id. at 1277.

18   4.  Analysis

19   In his summary of the treatment record, the ALJ considered the objective medical evidence of
20  impairment.  He further noted that there was "some evidence of treatment noncompliance" (AT
21  26) and that plaintiff "self-discontinued multiple medications[.]"  AT 28.  The ALJ noted that
22  plaintiff's statement that she "quit drinking in 2009" was "inconsistent with the many
23  admission[s] of drinking since the 2020 alleged onset date."  AT 27; see AT 26 (plaintiff did not
24  "pick up her psychotropic medications last year because of drinking"); AT 27 (plaintiff was
25  drinking daily before claiming she had not drank in six months, "another misrepresentation").

26   "Overall," the ALJ wrote,

27   > [t]he claimant has struggled with mood, anxiety, psychotic, sleep and
   > trauma-related symptoms.  However, her symptoms have been
28   > complicated by alcohol abuse (for much of the record) and

> considerable medication non-compliance issues. . . . Additionally, while complaining of forgetfulness and distraction, largely, the claimant has presented with intact memory and fund of knowledge.

AT 29; see also AT 28 ("while the claimant endorsed symptoms [in 2022] such as poor sleep, poor concentration, anxiety attacks and depressive thoughts, she was also admittedly medication non-compliant."), citing AT 2084. The ALJ thus considered plaintiff's testimony in light of certain inconsistent statements and a history of medication noncompliance, both appropriate factors in the credibility analysis.

The ALJ also recounted plaintiff's reported daily activities, noting that, in the 2022 exam by Dr. Dixit, plaintiff "admitted that she could perform household chores, drive and shop. Moreover, while she lacked motivation, she was able to perform self-care tasks." AT 25, citing AT ; see also AT 32 ("[W]hile she has struggled with homelessness, she has admitted ability to perform chores, drive and shop."). These too are appropriate considerations in the credibility determination.

The undersigned concludes that the ALJ sufficiently explained what testimony he found not credible and what evidence undermined it. Because he used the proper process and provided proper reasons, the court defers to his credibility analysis. Plaintiff has not shown error in this claim.

C. <u>Lay Witness Testimony</u>

Lastly, plaintiff claims that the ALJ erred in discounting the lay witness testimony of her sister, Wanda Keith, who submitted third-party adult function reports in December 2021 and October 2022. AT 250-257, 311-318.

In her 2021 report, Ms. Keith stated that she saw plaintiff, who was homeless, every two or three months and was "unaware how she spends her day." AT 250-251. Ms. Keith stated that plaintiff had problems getting along with family and "isolates from everyone and everything." AT 25. She indicated that plaintiff's symptoms affected multiple abilities including memory, completing tasks, concentration, understanding, following instructions, and getting along with others. AT 255. Ms. Keith reported that plaintiff does not handle stress or change well and "can show signs of paranoia." AT 256. She stated that plaintiff could walk for three to five minutes

before needing to rest.  AT 255.  Ms. Keith's October 2022 report was largely the same.

The ALJ discussed Ms. Keith's testimony as follows:

> [Ms. Keith] described her sister as homeless with a tendency to cancel plans.  Moreover, she indicated that the claimant has problems staying focused and needed reminders for doctor appointments.  Further, she alleged that her sister was not good with stress or changes.  Moreover, she indicated that the claimant is agitated easily, angry all the time and does not trust others.  Notably, the undersigned appreciates that there has been rather minimal evidence of significant anger issues within treatment records.  Rather, . . . the claimant has mostly presented with pleasant, cooperative demeanor.

AT 25.

The regulations require an ALJ to "consider" all evidence in the record.  20 C.F.R. § 404.1520c(d).  Under the 2017 amendments to regulations, an ALJ is "not required to articulate how [they] considered evidence from nonmedical sources[.]"  20 C.F.R. § 404.1520c(d).  "This suggests that an ALJ may consider a lay opinion . . . without explicitly discussing it or making any related findings in the written decision.  That the Ninth Circuit has reached a similar conclusion, albeit in unpublished opinions, supports this argument."  Tiamiyu v. Comm'r of Soc. Sec., No. 2:24-cv-2043 AC, 2025 2193021, *10 (E.D. Cal. Aug. 1, 2025) (citing Kennedy v. O'Malley, 2024 WL 242992, at *2 (9th Cir. 2024) (unpublished) (ALJ "not required to articulate how [she] considered evidence from nonmedical sources under the new regulations") (internal quotation marks omitted).

Here, the ALJ considered Ms. Keith's lay testimony and was not required to do more.  Plaintiff has not shown error on this basis.

CONCLUSION

For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 10) be denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 12) be granted; and

3. Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

1 | days after being served with these findings and recommendations, plaintiff may file written
2 | objections with the court. Such a document should be captioned "Objections to Magistrate
3 | Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within
4 | the specified time may waive the right to appeal the District Court's order. <u>Turner v. Duncan</u>,
5 | 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: December 19, 2025

_/s/ Carolyn K. Delaney_
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/keit3393.bothdibssi.f&rs